WILLIAM STRAIN ET AL. *vs*. STEWART L. MIMS ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

276

Argued June 3d—decided July 27th, 1937.

*Joseph L. Melvin,* for the plaintiffs.

*William C. Strong,* for the defendants Stewart L. Mims et als.

*A. Amasa Miller,* with whom was *Trenholm H. Marshall,* for defendants Jessie S. Foot et als.

MALTBIE, C. J.   The plaintiffs have, since 1915, conducted a general neighborhood store on property at the southeast corner of the intersection of Round Hill Road and Old Mill Road in Greenwich, known as the "Four Corners," in a building upon premises which at first they leased but which in 1923 they purchased. When, in 1926, the town adopted a comprehensive zoning ordinance the land at all four corners of the intersection to a certain depth was placed in a No. 1 business zone, which permitted the continued use of the plaintiffs' premises for a general store and, if permitted by the board of appeals, for a gas filling station. On or about June 19th, 1933, the plaintiffs, under the name of the Round Hill Service Station, applied to the zoning board of appeals for approval of the premises as a site for two gasoline pumps.   On July 28th, 1933, certain owners of property situated at or in the vicinity of the intersection of the two roads made application to the zoning commission to re-zone the property at that point which was classed as a No. 1 business zone so that it would become an A residence zone. This would have the effect of making the use of the plaintiffs' premises for store purposes a nonconforming use and automatically prevent the grant of the application for the establishment of a gas filling station there. The defendants, owning more than 20 per cent. of the

area of the land included in the proposed change, filed a written protest against it with the zoning commission. On October 20th, 1933, after proper notice, a public hearing was held upon the application to change the zoning of the property, and on October 30th, 1933, without further notice or hearing, the commission passed a vote that the property at the intersection theretofore zoned for business should be re-zoned as an A residence zone.

The plaintiffs then brought this action seeking a declaratory judgment determining whether or not the vote making the change was valid. They claimed that it was invalid because of certain procedural faults in the method of its adoption and because the action of the commission was arbitrary, unreasonable, in abuse of its discretion and deprived the plaintiffs of their property without due process of law. The trial court concluded that the vote was not adopted in compliance with the procedure established by law and was therefore invalid but that if it had been legally adopted it would not have been arbitrary, confiscatory or unconstitutional. Both parties have appealed, the defendants from the portion of the judgment holding that the vote was not validly adopted, and the plaintiffs from the portion which held that if it had been validly adopted it would not have been arbitrary, confiscatory or unconstitutional. As we hold that there was error upon the plaintiffs' appeal and that judgment declaring that the vote making the change was invalid must be entered, altogether apart from any question as to the procedure followed in its adoption, it is not necessary to decide the questions raised on the defendants' appeal; but because they involve certain procedural matters of general application under the statutes concerning zoning we shall point out certain considerations affecting them.

The zoning regulations of the town provide that the regulations or zone boundaries may be amended, changed or repealed by the zoning commission subject to the provisions of Chapter 242 of the Public Acts of 1925, which, so far as material to the issues in this case, is now incorporated in § 425 of the General Statutes. It is therein provided that no zoning regulations or boundaries shall become effective until after a public hearing upon certain specified notice has been held by the zoning authority or by a committee thereof consisting of at least five members, and that if a protest is filed by the owners of a certain percentage of the property affected or in the immediate vicinity, no change in such regulations or boundaries once established shall become effective "except by unanimous vote of the zoning authority if such zoning authority is a zoning commission, or a vote of three-fourths of all the members of any other zoning authority," and that the provisions concerning notice and hearing, above referred to, shall apply to any proposals for such a change. It is not questioned that the protest filed by the plaintiffs was sufficient to require a hearing after notice, or that the hearing held was upon proper notice.

At that hearing only four of the five persons then acting as the zoning commission of the town were present. After the conclusion of the public hearing, there was some discussion of the proposed change, but no action having been taken, the finding, not attacked in this regard, states that the meeting then adjourned without day. At the meeting on October 30th, all those purporting to be members of the zoning commission were present and the change was unanimously voted. The conclusions of the trial court upon this phase of the case, briefly summarized, were that under the statute no change in a zoning regulation or

boundary could become effective unless adopted by the unanimous vote of all members of the zoning commission; that it was also impliedly required by the statute that all members should be present at the public hearing; and that the adjournment of the meeting on October 20th without day terminated the right of the commission to act further in the matter.

As the plaintiffs point out, zoning authorities are vested with power the exercise of which may very greatly diminish the market value of the property of individuals, without compensation being made to them. *State* v. *Hillman,* 110 Conn. 92, 147 Atl. 294. That is illustrated in the case before us by the fact that the change in zoning of the plaintiffs' premises would reduce their value from about $35,000 to about $10,000, even allowing for the continuance of the store as a nonconforming use. Particularly with respect to changes in zoning affecting specific property there is always present the danger that special interests may secure private benefit under the cloak of public welfare. *St. Patrick's Church Corp.* v. *Daniels,* 113 Conn. 132, 137, 154 Atl. 343. Most zoning ordinances throw particular safeguards about the making of changes after an ordinance of general application to a community has been adopted, which are intended to assure that the matter has been fully and fairly considered and is truly dictated by the public interests. Statutory requirements fixing the manner in which such changes shall be made should, in case of doubt, be construed with a view to accomplish this design and to give just protection to the rights of individual property owners; and those requirements should not be readily relaxed. *Perkins* v. *Colebrook,* 68 Conn. 113, 35 Atl. 772. Even though, as the defendants claim was the situation here, no other result would have been reached had all the requirements which the court found

applicable been met, yet any departure from the established methods of procedure is fraught with danger.

In the absence of legislative restriction, the general rule is that a committee or commission performing such functions as those exercised by the zoning commission in this case can take valid action at a meeting of which all members have proper notice and at which a majority are present. *Congress Bank & Trust Co. v. Brockett,* 111 Conn. 490, 492, 150 Atl. 742; *Dunn v. Flynn,* 107 Conn. 272, 274, 140 Atl. 204; *Smith v. New Haven,* 59 Conn. 203, 211, 22 Atl. 146; *Wilson v. Waltersville School District,* 46 Conn. 400, 407. Where it is required that particular action can be taken only by unanimous vote, it is generally held, if there is no further restriction, that it is sufficient if all those at a meeting duly called, constituting a quorum, vote in favor of it. See 2 McQuillin, Municipal Corporations (2d Ed.) § 626; 19 R. C. L. p. 890.

In the situation before us, the Legislature has made a specific requirement that changes in zoning regulations or boundaries can become effective only "by unanimous vote of the zoning authority if such zoning authority is a zoning commission," as was the case here. The defendants claim that it was not the intent of the Legislature to alter the general rule, and that if all members of a commission present at a meeting duly called and constituting a majority, vote in favor of a change in the regulations or boundaries that is sufficient. To construe the statute in this way would mean that a change could be made by the vote of a mere majority of a zoning commission, whereas the statute is specific that if the zoning authority is not a zoning commission a vote of three-fourths of all members is required. Indeed, the latter requirement strongly suggests that when the Legislature required the unanimous vote of a zoning commission it had in mind all

its members. We construe the statutory requirement as meaning that no change in a zoning regulation or boundary shall become effective unless all members of a zoning commission vote in favor of it. We have not overlooked the case of *Gumm* v. *City of Lexington*, 247 Ky. 139, 56 S. W. (2d) 703; the statute there in question provided that a change could not be made in a zoning division unless it was first "adopted by the unanimous vote" of the zoning commission, and it was held that this required only a unanimous vote of the members present at a meeting, if they constituted a quorum; but that case is distinguishable from the one before us in that there was no other provision in the statute under consideration which would indicate that the Legislature had in mind a requirement that the whole membership of a zoning commission should vote in favor of a change before it could become effective.

That conclusion of course would not meet the situation here present, because all five members of the zoning commission did vote in favor of the change. The statute does not in terms require that all members of a zoning commission shall attend the public hearing upon application for a change in the zoning regulations or boundaries. The purpose of the public hearing is, of course, to inform the members of the commission as to the reasons why the change should or should not be made. Interested parties who appear at it are likely to be specially conversant with the surrounding circumstances and the effect the change would produce. Members not in attendance at the hearing may very likely not become informed fully, if at all, of the reasons advanced in support of or against the change, and so not have the best basis for determining the conclusion to which they should come. We do not now decide that the presence of

all is necessary, but merely point out that it is advisable that they should attend.

The trial court further concluded that as the meeting of the commission at which the public hearing was held had adjourned without day the commission could not validly act at the meeting when the vote was finally taken, although all purporting to be members of it then voted in favor of the change. The general rule applicable to deliberative assemblies is stated as follows: "An adjourned meeting is legally the continuation of the meeting of which it is an adjournment. When a meeting is adjourned before the business is finished, and that meeting closes the session, the unfinished business may be introduced at the next session as new business on the same footing as if it had never been before the assembly." Trow, The Parliamentarian, p. 76. Ordinarily in the absence of any provision for stated meetings, an adjournment without day is notice to all concerned that matters which have been under consideration will not again be taken up unless initiated under the procedure established for new business. We are not disposed too rigorously to apply technical rules to the action of administrative boards and commissions, but a proper regard for established rules of procedure will cause little trouble and be likely at least to avoid such questions as have arisen in this case.

With reference to the plaintiffs' appeal, the trial court has found the following facts: The land involved in the zoning change is located in the north central section of the town, about six miles from the business part. The region was originally devoted to farming and there are still a few old unimproved farm houses with the usual outbuildings in the vicinity, but it is now quite largely devoted to residential purposes by people whose business is in New York City. Many

of the residents are wealthy and many of the residences occupy premises comprising two or more acres. This was the situation when the zoning ordinance was adopted and there has been no material change in the neighborhood, although within two or three miles of the "Four Corners" a number of high class residences have been erected and a number of residences have been improved and enlarged. The three corners at the intersection in question, aside from that where the plaintiffs' store is located, are owned by certain of the defendants, and their holdings comprise respectively ninety-eight acres, fifty acres, and two acres. The plaintiffs' premises have an area of about two and one-third acres. There is no other store within four and one-half miles and no gasoline station within five miles. During the years 1926 to 1929 the plaintiffs have spent about $8500 in improving their buildings, about $5500 being used to better their condition for store purposes. In connection with the application for permission to install the gasoline pumps, the plaintiffs offered to disguise them with stone work so that they would conform with the semi-rural appearance of the neighborhood and also to use very limited advertising facilities, and they did not ask to erect any additional buildings. The small area at the "Four Corners" is the only land in that part of the town zoned for business, and it is surrounded by property classed as an A residence zone.

The effect of the change would be to remove altogether the business zone at this point, although the store could continue as a nonconforming use and could be reconstructed or altered provided the cost of the "structural alteration" did not exceed 50 per cent. of its assessed value. The presence of the store is not a detriment to the neighborhood and it is of convenience to many people. Traffic along the Round Hill Road

is probably lessened by it as it renders unnecessary some trips to the business section of the town. The plaintiffs' property would have little value as a site for a residence of the type found in that region. For business purposes the premises are readily salable, but if placed in a residence zone the uncertainty whether the building could be replaced for store purposes if it were destroyed, would detract very materially from its sale value. If its use for business purposes is permitted to continue, it is worth about $35,000, but if re-zoned as voted it would have a market value of only about $10,000, even taking into consideration the continuance of the store as a nonconforming use. The other neighboring properties would be "depreciated in value in the event that one or more of the 'Four Corners' remained zoned for business."

There is, as the trial court states in its conclusions, a presumption that such a board as the zoning commission has acted with fair and proper motives, skill and sound judgment. *St. Patrick's Church Corp.* v. *Daniels,* supra, p. 139; *Burr* v. *Rago,* 120 Conn. 287, 291, 180 Atl. 444. This presumption would avail in the absence of any showing of facts relevant to the validity of the action of the commission or where facts appear sufficient in themselves to sustain the reasonableness of the conclusion reached by it. Upon an appeal from a decision of the commission to the court, however, it is the function of the court, if the issue is raised, itself to find the relevant facts and it must determine, upon the basis of those facts, whether that action was reasonable and proper. *Holley* v. *Sunderland,* 110 Conn. 80, 82, 147 Atl. 300; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 21, 157 Atl. 273; *State Bank & Trust Co.* v. *Wilmette,* 358 Ill. 311, 318, 193 N. E. 131.

Zoning regulations are adopted in the exercise of

the police power of the State and to be valid must have a rational relation to the health, safety, welfare and prosperity of the community. *State* v. *Hillman*, 110 Conn. 92, 100, 105, 147 Atl. 294; *Washington ex rel. Seattle Trust Co.* v. *Roberge*, 278 U. S. 116, 120, 49 Sup. Ct. 50. The enabling act under which the vote here in question was adopted specifies the purposes which such regulations must serve. They must be "designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent overcrowding of the land; to avoid undue concentration of population and to facilitate adequate provision for transportation, water, sewerage, schools, parks and other public requirements." General Statutes, § 424. Where zoning regulations reasonably serve these purposes, ordinarily the fact that their adoption causes loss to an individual is no reason to hold them invalid. *State* v. *Hillman*, supra, p. 104; *Thayer* v. *Board of Appeals*, supra, p. 22; *Osborn* v. *Darien*, 119 Conn. 182, 185, 175 Atl. 578. However, where the value of property of an individual is seriously affected by a zoning regulation especially applicable to it, this fact imposes an obligation carefully to consider the question whether the regulation does in fact tend to serve the public welfare and the recognized purposes of zoning. *Connecticut Co.* v. *Stamford*, 95 Conn. 26, 33, 110 Atl. 554; *Village of Terrace Park* v. *Errett*, 12 Fed. (2d) 240, 242; *State Bank & Trust Co.* v. *Wilmette*, supra, p. 319; and see *State* v. *Hillman*, supra, p. 107.

We are not here confronted with the validity of a comprehensive ordinance excluding business as a whole from a residential area, which ordinarily would be sustained as within the police power. *Fitzgerald* v. *Merard Holding Co., Inc.*, 110 Conn. 130, 138, 147 Atl.

513. Practically the change we are considering involves only a single property. It must also be borne in mind that the proposal before us is to make a change in a plan of zoning which went into effect in 1926, and in apparent reliance upon which the plaintiffs have made very substantial improvements upon their property. One of the essential purposes of zoning regulation is to stabilize property uses; *Kane* v. *Board of Appeals of Medford,* 273 Mass. 97, 104, 173 N. E. 1; and this is indicated by the fact to which reference has already been made, that Legislatures usually condition, as does our law, changes in regulations by certain procedural requirements designed to safeguard the rights of individuals. Where a proposed change involves only a single or a very few properties, to a considerable extent the same considerations apply as those we pointed out in *St. Patrick's Church Corp.* v. *Daniels,* supra, p. 138, with reference to successive applications for permission to use property for a certain purpose; ordinarily such a change should be made only "where new or additional facts appear, or other considerations materially affecting the merits, intervening since" the regulations were adopted. *Dobbins* v. *Los Angeles,* 195 U. S. 223, 239, 25 Sup. Ct. 18; *Kennedy* v. *City of Evanston,* 348 Ill. 426, 433, 181 N. E. 312.

The trial court has found no facts which in any way indicate that the public welfare or the purposes of zoning specified in the statute will in any way be served should the proposed change be made. It is true that we are asked to add to the finding a statement of certain grounds for the change claimed to have been advanced at the hearing and certain grounds upon which it is claimed the commission acted in voting to make it. The failure of the trial court to make the requested findings indicates that it was not

satisfied with the small amount of testimony offered in support of them, a conclusion which we cannot say it could not reasonably reach. But even if we should add the requested findings, it would still remain true that there is an entire failure to show that such of them as were relevant had any substantial basis in fact. The exercise of discretion by an administrative board cannot be sustained in court on the basis of conclusions it reached unless those conclusions are based upon circumstances which reasonably justified them. *Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 229, 177 N. E. 427. "The reasonableness of an order such as this, is to be determined by the facts from which the conclusion is drawn, rather than from the conclusion itself." *Connecticut Co.* v. *Stamford,* supra, p. 33.

There has been no substantial change in the neighborhood since the original adoption of the zoning regulations. The only effect suggested in the trial court's finding which the change in the ordinance would have is that the value of certain neighboring properties would increase if it was made. But an increase in value of those properties in itself would not justify the change. *Amero* v. *Board of Appeal of Gloucester,* 283 Mass. 45, 186 N. E. 61. The outstanding and controlling fact is that the value of the plaintiffs' property will be diminished about 70 per cent. without, so far as appears, in any way promoting the public welfare, and in the absence of any substantial change in the neighborhood since the adoption of the original regulations. Such a change is not one which the commission could reasonably vote.

In *State Bank & Trust Co.* v. *Wilmette,* supra, a situation very similar to the one before us was presented; certain owners of property in a commercial district applied for permission to erect a garage and sales building, which was a permitted use; thereupon

the village board amended the zoning regulations to forbid such buildings in commercial districts of that class; this would have greatly impaired the value of the applicant's property without in any way serving the public welfare; and the change was held unreasonable and void as regards the applicant's property. In *Nectow* v. *Cambridge,* 277 U. S. 183, 48 Sup. Ct. 477, it was held that it would be a violation of the Fourteenth Amendment of the United States Constitution to include a certain piece of property within a residential district where it was not practical to use it for the purpose permitted and its inclusion materially affected its value; the court said (p. 188): "The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare. *Euclid* v. *Amber Realty Co.* [272 U. S. 365, 47 Sup. Ct. 114] 395. Here, the express finding of the master, already quoted, confirmed by the court below, is that the health, safety, convenience and general welfare of the inhabitants of the part of the city affected will not be promoted by the disposition made by the ordinance of the locus in question. . . . That the invasion of the property of the plaintiff in error was serious and highly injurious is clearly established; and, since the necessary basis for the support of that invasion is wanting, the action of the zoning authorities comes within the ban of the Fourteenth Amendment and cannot be sustained."

In *Dowsey* v. *Village of Kensington,* supra, the plaintiff owned a piece of property upon the boundary of a village, which was adjacent to property beyond the boundary which might be used for apartments or busi-

ness, and to restrict the plaintiff's property to residential purposes alone would reduce its value by about three-quarters; a zoning ordinance having that effect was held void as to his property, the court stating (p. 231): "Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use to which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced." *Taylor* v. *Haverford Township,* 299 Pa. St. 402, 149 Atl. 639, presented a quite similar situation and a like conclusion was reached. Other cases sufficiently analogous to the one before us to lend support to our conclusion are: *Village of University Heights* v. *Cleveland Jewish Orphans' Home,* 20 Fed. (2d) 743; *People* v. *Hawley,* 207 Cal. 395, 410, 279 Pac. 136; *Kennedy* v. *City of Evanston,* supra; *Gilfillan's Permit,* 291 Pa. St. 358, 140 Atl. 136; *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 N. J. L. 183, 147 Atl. 555; *Mayor and Council of Wilmington* v. *Turk,* 14 Del. Ch. 392, 129 Atl. 512; *City of North Muskegon* v. *Miller,* 249 Mich. 52, 227 N. W. 743; *McCabe* v. *Zoning Board of Review,* 50 R. I. 449, 148 Atl. 601.

The owners of other properties involved in the change in the ordinance appear in support of that change. As is indicated in the cases we have cited, the vote making the change is not necessarily invalid as a whole because of its unlawful effect upon the plaintiff's property and we hold it void only as to that property.

There is error upon the plaintiffs' appeal and the case is remanded with direction to enter a judgment for the plaintiffs that the vote of the zoning commission changing the zoning regulations is, as respects the plaintiffs' property, unreasonable, confiscatory and

void. The defendants' appeal is not decided. The plaintiffs may have costs upon their appeal but no costs will be taxed upon the defendants' appeal.

In this opinion the other judges concurred.