ZONING COMMISSION OF THE TOWN OF NEW CANAAN *v.*
NEW CANAAN BUILDING COMPANY, INC., ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued December 3, 1958—decided February 3, 1959

*Charles R. Covert,* with whom was *Raymond W.
Beckwith,* for the appellants (defendants).

*John N. Cole,* for the appellee (plaintiff).

MELLITZ, J. This is an appeal from a judgment enjoining the erection of an apartment house on premises in New Canaan owned by the defendants Lester B. Gale and Mary R. Gale and contracted to be sold by them to the named defendant, hereinafter referred to as the corporation. With such corrections as are warranted, the facts found are as follows: On June 30, 1941, zoning regulations were adopted in the town of New Canaan establishing an apartment house zone. The Gale property was located in this zone. In May, 1956, the defendant J. Elliott Smith, principal party in interest in the corporation and acting for it, negotiated for the purchase of the Gale property. He was then building an apartment house nearby, having started it the previous year. On May 18, he commenced negotiations with the federal housing administration for mortgage financing on an apartment building to be constructed on the Gale property. On July 6, a contract for the sale of the property to the corporation was entered into, and a payment of $3550 was made on the purchase price. On July 12, a surveying organization began a survey of the property. Smith sent an application to the federal housing administration on July 16 for mortgage financing, together with a filing fee of $396. On August 10, the corporation applied for a foundation permit, which was issued on August 30. Stakes were driven on September 5 for the location of the foundation of the south wing of the building. The corporation applied on September 7 for a building permit, and one was issued on September 10 on payment of a filing and zoning fee of $242.

On September 6 and 13, 1956, the New Canaan zoning commission caused notice to be published of a public hearing to be held on September 20 to consider a petition, filed by a group of neighboring

property owners, to change a small tract, including the Gale property, from an apartment house zone to a B residence zone. On September 17, attorneys for the corporation wrote the commission urging that the petition be denied on the ground that zoning "should be comprehensive for the Town as a whole and not localized as a result of pressure group petitions." They gave notice that the corporation claimed the right to proceed with construction of the apartment house irrespective of action upon the petition by the commission. The public hearing was held on September 20, and the commission rejected the petition on October 12. In its minutes, the commission expressed the opinion that any action taken by it would be too late to prevent the erection of the apartment house under the outstanding permits and that to change the zone would not accomplish the purpose of the residents in the area to stop the building of the apartment house. On November 21, the commission voted to abolish the apartment house zone effective December 1, and it placed all the areas then located in that zone in an adjacent B residence zone as of that date. No physical change of conditions had occurred in the subject area between October 12 and November 21. On December 26, the zoning enforcement officer and building inspector wrote the corporation that it had the right to erect the apartment house even though the zone had been changed. The corporation on December 28 made a further payment of $5325 on the purchase price of the property.

On January 30, 1957, the commission received a letter from a resident in the neighborhood stating that construction of the apartment building would be detrimental to the neighborhood and that the change of zone had the effect of voiding the build-

ing permits which did not conform to the new zone. The commission sought and obtained a legal opinion on the subject. Thereafter, by letter dated February 11, 1957, the zoning enforcement officer, at the direction of the commission chairman, wrote the corporation revoking the permits issued to it for failure to comply with § 14.6 of the zoning regulations. This section provides, in effect, that construction of a building shall not be affected by an amendment of the regulations if the foundation has been started at the effective date of the amendment. The letter was received by the corporation on February 14. On February 13, machinery was in use digging footings, and concrete was being poured for them in an excavation twenty-four by thirty feet, and four feet deep. At a meeting of the commission on February 19, the revocation of the permits was approved and it was voted to institute injunction proceedings to halt construction. In addition to the sums paid on the purchase price of the Gale property and for permit fees and mortgage financing, payments were made or obligations incurred, between May 18, 1956, and February 13, 1957, for architectural renderings, $75; for staking the foundation and surveying, $561; for architectural services, $5812.66; and for legal services, $1419. Smith spent the major portion of his working time in preliminaries essential to the physical erection of the building.

On these facts, the trial court concluded that construction of the proposed apartment building became illegal after December 1, 1956, the effective date of the zone change, and enjoined the defendants from proceeding further. The court based its ruling on the holdings in *Fitzgerald* v. *Merard Holding Co.*, 110 Conn. 130, 147 A. 513, and *Graham Corporation*

v. *Board of Zoning Appeals,* 140 Conn. 1, 97 A.2d 564, and the failure of the defendants to bring themselves within the saving provisions of § 14.6 of the regulations. The authorities upon which the court rested its decision are clearly distinguishable on their facts from the situation found here. In the *Fitzgerald* case, supra, no permit authorizing construction was ever issued. The named defendant contracted for a site in a residential zone and commenced excavation for a business building after proposed zoning regulations had been filed for public inspection and notice had been given of an impending hearing thereon. Although warned that the building would violate the regulations and that no permit would be issued, the defendant proceeded to complete and use the building for business purposes. On these facts, the court refused to permit the defendant to take refuge behind the expenditures it had made in its attempt to forestall and circumvent the contemplated regulations and, after their passage, to override them. In the *Graham* case, supra, the plaintiff bought land located in a zone which limited dwellings to not more than eight families except as authorized by a special exception. For over a year the plaintiff attempted to overcome obstacles which blocked its erection of a building to house 195 families. In the face of tireless opposition on the part of adjacent property owners, the plaintiff obtained a foundation permit and, in anticipation that the opposition would seek a review, hastily brought in power shovels and poured concrete footings. It was held that the hurried incurring of expenditures by the plaintiff did not commend itself to any equitable consideration and that the difficulty in which the plaintiff found itself in the matter of expense was one of its own deliberate choice.

Here the subject property had been in the apartment house zone since 1941, more than fifteen years before. Acting in good faith, the corporation purchased the property for $37,368.42. Its fair market value for apartment house use was $37,500, while for two-family residence purposes its value was $25,000. Smith was, at the time, engaged in building another apartment house close by, and nothing had occurred to warn the defendants that there was a possibility of a change in zone or that for any other reason construction of an apartment house on the property might become illegal. They had the right to rely on the fact that the property had long been zoned for apartment house use and that an essential purpose of zoning regulations is stabilization of property uses. *Strain* v. *Mims,* 123 Conn. 275, 287, 193 A. 754; *Abbadessa* v. *Board of Zoning Appeals,* 134 Conn. 28, 34, 54 A.2d 675. There is nothing in the finding to indicate a change in the character of the neighborhood which would warrant a reclassification of the area. Ordinarily, changes in zone should not be made unless new conditions have arisen or there have been substantial changes in the area. *Parsons* v. *Wethersfield,* 135 Conn. 24, 30, 60 A.2d 771. "Before a zoning board rezones property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that a reclassification ought properly to be made." 1 Yokley, Zoning Law & Practice (2d Ed.) § 85 (1957 Sup.). Those who buy property in a zoned district have the right to expect that the classification made in the ordinance will not be changed unless a change is required for the public good. 8 McQuillin, Municipal Corporations (3d Ed. Rev.) p. 307; *Hills* v. *Zoning Commission,* 139 Conn. 603, 608, 96 A.2d 212;

*Wesemann* v. *LaGrange Park,* 407 Ill. 81, 89, 94 N.E.2d 904.

Immediately upon the purchase of the Gale property, the corporation had it surveyed and took a series of steps looking toward the realization of its project. These included mortgage financing, the acquisition of the required permits and the driving of foundation stakes. It was then, for the first time, that a few neighboring property owners undertook to prevent the defendants from continuing with the construction. They petitioned for the rezoning of an area which included the subject property. There was no pretense that the rezoning petitioned for was to promote the public welfare or was justified as serving the good of the community as a whole. The minutes of the meeting of the commission on October 12, 1956, clearly indicate that the sole purpose of the amendment sought was to prevent the corporation from going forward with its project and that the commission was aware of this purpose. Then, a little more than a month later, without any change of conditions in the area, the commission undertook to eliminate the apartment house zone and thereby accomplish the objective of the neighboring property owners which had been defeated when the earlier proposed amendment was rejected. The controlling test of the propriety of a change of zone "must be, not the benefit to a particular individual or group of individuals, but the good of the community as a whole." *Kuehne* v. *Town Council,* 136 Conn. 452, 461, 72 A.2d 474. The primary reason assigned by the commission for the enactment of the amendment was that "presently existing specifications for multi-family dwellings and apartment houses . . . are inadequate and antiquated and must be studied and revised. . . . [T]oo many apartment houses in the

Residential area will depreciate property values in their immediate vicinity and . . . pending completion of [the commission's] study, no further apartment houses . . . should be erected in the Town." The study remained uncompleted at the time of the argument of this appeal, although there is recorded in the minutes of the meeting at which the amendment was adopted the following statement: "The Chairman pointed out to the Commission, following the . . . vote, that the Commission was morally committed to undertake a study of the apartment and multi-family dwelling situation in the immediate future and bring the matter to a Public Hearing within a reasonable time."

It is clear that the rezoning of the subject property which resulted in placing it in a residential zone was not in pursuance of a comprehensive plan to promote the public welfare, which alone would warrant such a change. *Hills* v. *Zoning Commission,* 139 Conn. 603, 608, 96 A.2d 212. We hold the amendment to be invalid so far as it affects the defendants' property. *Corthouts* v. *Newington,* 140 Conn. 284, 290, 99 A.2d 112; *Strain* v. *Mims,* 123 Conn. 275, 290, 193 A. 754. This conclusion makes it unnecessary to consider the further claim of the defendants that because of the expenditures made and the obligations incurred on the strength of the permits issued, and because of the extent to which construction activities had proceeded before they were prevented from continuing, the right to proceed with construction was not affected by the amendment of the zoning ordinance.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.