JOHN NOWICKI ET AL. *v.* PLANNING AND ZONING BOARD OF THE TOWN OF MILFORD ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued May 5—decided June 20, 1961

*Joseph Weiner,* with whom were *Stephen Ronai* and, on the brief, *William Gitlitz,* for the appellants (defendants Woodruff).

*Florence G. Brodman,* with whom was *Joseph Bernblum,* for the appellees (plaintiffs).

BORDON, J. The plaintiffs are the owners of property in Milford in the vicinity of Orange Avenue. They filed protests against changing the zone classification, from R-30 to R-18, of property owned by the defendants Harold and Jeannette Woodruff. The planning and zoning board of Milford, in this instance acting as a zoning board, granted the Woodruffs' petition, and the plaintiffs appealed to the Court of Common Pleas. The trial court sustained their appeal, and from this judgment the Woodruffs, hereinafter called the defendants, have appealed.

Zoning in Milford exists under what is now §§ 8-1 to 8-13 of the General Statutes. The zoning regulations, as adopted, were reaffirmed after a survey by competent experts engaged by the town. As a re-

sult, Milford has a comprehensive plan of zoning based on a long range plan to control maximum residence growth within the town. The recommendations for the future growth and development of the town affect the area which is the subject of this appeal. The defendants' land is separated by Orange Avenue into two parcels, both irregular in shape. The parcel on the east side of Orange Avenue is divided horizontally into two zones, the northerly portion being zone R-30 and the southerly, zone R-18. The parcel on the west side of Orange Avenue is somewhat elongated in shape and is divided longitudinally into two zones. A strip which fronts on Orange Avenue and is about 1500 feet long and 150 feet wide is in zone R-18, and the remaining portion is in zone R-30. A portion of the defendants' property is bounded by property of Robert and Elizabeth Beckwith on which is conducted a business, "Buttercup Farms," as a nonconforming use.

The zoning regulations create the five following classifications for one-family residences: R-A, requiring an acre of land; R-30, requiring 30,000 square feet; R-18, requiring 18,000 square feet; R-10, requiring 12,500 square feet; and R-7, requiring 7500 square feet. Milford Zoning Regs., c. 2, § 1 (1954, as amended). The area requirements are larger as the distance from the center of Milford increases. The purpose of the regulations, as set out in them, is "to encourage the most appropriate use of land throughout the Town and to conserve the value of property, with reasonable consideration for the character of the district and its peculiar suitability for particular uses; all in accordance with a comprehensive plan designed to lessen congestion in the streets; . . . to prevent the

overcrowding of land [and] to avoid undue concentration of population . . . ." Id., c. 1.

The six assignments of error raise three issues: (1) Are the plaintiffs aggrieved persons? (2) Was the action of the board arbitrary, unreasonable and in abuse of discretion? (3) Did the action of the board constitute spot zoning?

The plaintiffs all own property in the neighborhood of the defendants' land. The court found that the plaintiffs' property will be adversely affected by the change of zone. The land of two plaintiffs, Anthony and Esther Kivic, is contiguous to that of the defendants and in the same R-30 zone. Any aggrieved person has the right to appeal from the action of a zoning authority. General Statutes §§ 8-8—8-10. The court concluded that the plaintiffs were aggrieved persons. The Kivics will be specially and adversely affected by the change and clearly are aggrieved persons under the statute. It is therefore unnecessary to review the conclusion of the court that the other plaintiffs, also, were aggrieved persons. *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 661, 145 A.2d 832. The conclusion of the trial court that the plaintiffs Kivic were aggrieved persons was correct.

The changes sought by the defendants' petition would downgrade the zoning of their R-30 property to R-18. This would enable a developer to subdivide the land into building lots having a frontage of 125 feet instead of 150, and an area of 18,000 square feet instead of 30,000, and to erect on these lots one-family houses with a floor area of 1300 square feet instead of 1500.

Zoning was adopted in Milford with unusual care and pursuant to a comprehensive zoning plan. The classifications, set forth with clarity, were designed

to implement the purposes contained in chapter one of the regulations. In general, the residential areas were regulated with a design to lessen congestion and prevent the overcrowding of land. At about the time of the adoption of revised zoning regulations in 1954, the planning and zoning board engaged a firm of community planning and development consultants to survey the town and report on the best plan for its development. On June 30, 1956, they gave the planning and zoning board a report of their findings and recommendations, labeled "Town Plan of Development." In September, 1956, they made a further report, as a supplement to that of June 30, on future zoning regulations. The residence zone classifications applying to the defendants' land accord with the recommendations of the town plan of development as supplemented.

An essential purpose of zoning is to stabilize use of property. The owners of property adjoining that of the defendants, and those who erected residences in the area in accordance with the zoning provisions, had a right to rely on the fact that the existing regulations would control the use of the defendants' property. *Zoning Commission* v. *New Canaan Building Co.,* 146 Conn. 170, 175, 148 A.2d 330; *Abbadessa* v. *Board of Zoning Appeals,* 134 Conn. 28, 34, 54 A.2d 675; *Strain* v. *Mims,* 123 Conn. 275, 287, 193 A. 754. Changes in zone should be in harmony with the comprehensive plan and should ordinarily be made only when new conditions have arisen or when there have been substantial changes in the area. *Hills* v. *Zoning Commission,* 139 Conn. 603, 609, 96 A.2d 212; *Parsons* v. *Wethersfield,* 135 Conn. 24, 29, 60 A.2d 771; 1 Yokley, Zoning Law and Practice (2d Ed.) § 85; 8 McQuillin, Municipal Corporations (3d Ed.) p. 307.

A comprehensive plan means a general plan to control and direct the use and development of land in a municipality by dividing it into districts according to the present and potential use of the properties. *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 618, 53 A.2d 659; *Kuehne* v. *Town Council,* 136 Conn. 452, 460, 72 A.2d 474; see also *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668; *Kutcher* v. *Town Planning Commision,* 138 Conn. 705, 709, 88 A.2d 538. The comprehensive plan in the present case is found in the scheme of the zoning regulations considered in the light of the town plan of development. Not only were present uses provided for but they were projected into the future in furtherance of a general plan designed to serve the best interests of the community as a whole. This general plan was intended to control density of population and lead to the ultimate control of population in the community. It permitted fewer homes on larger lots. Under such circumstances, a change of zone affecting a comparatively small area and running counter to the recommendations of the plan for future development should be made by the zoning authority only when there has been a change in conditions or new considerations have arisen since the area was originally zoned. *DeMars* v. *Zoning Commission,* 142 Conn. 580, 583, 115 A.2d 653; *Hills* v. *Zoning Commission,* supra, 609. A zone classification should not ordinarily be changed unless some new condition has arisen which substantially alters the character of the area. *Ball* v. *Town Plan & Zoning Commission,* 146 Conn. 397, 400, 151 A.2d 327.

The court concluded that there had been no change of conditions in the neighborhood which justified the change of zone. The defendants ob-

ject to this conclusion on the ground that it is not supported by the evidence. The evidence discloses no change in conditions which was not contemplated when the zoning regulations were adopted. The nonconforming use of the Beckwith property was then in existence as a business enterprise and it has not substantially varied since. It was originally a commercial chicken business, necessitating the use of trucks for bringing in materials and removing merchandise. It is now a milk depot, which also involves the going and coming of trucks. The character and appearance of the nonconforming buildings have not deteriorated.

The defendants also claim that the completion of a shopping center represents a change in conditions. This shopping center, located about a mile from the land in question, was contemplated by the town plan of development and conformed to the zoning regulations. The town plan of development also contemplated the establishment of a circumferential route as an integral part of the development contained in the plan. The prospect of constructing this route is not such a change in conditions as presently justifies the change of zone. The route will traverse much of the R-30 land in Milford and, when built, will benefit the community as a whole. If such a route will adversely affect the defendants' land, it will equally affect all other R-30 property in the area. The court was warranted in concluding that there had been no change in conditions in the neighborhood which justified the change of zone.

It is obvious from the minutes of the meeting of the board that the financial welfare of the defendants was the controlling reason for the change. The reasons given by members of the board for favoring the change appear to have no validity. It was stated

that zoning in the R-18 classification would produce better homes, better roads, sidewalks, curbs, and more taxable property. Just how this would result does not appear. The test of the board's power to change a zone is whether the change is for the benefit of the community as a whole rather than for the benefit of a particular individual or group of individuals. In this case, it appears that the board looked no further than the benefit which might accrue to the defendants and that it gave no consideration to the larger question of the effect the change would have on the comprehensive plan of zoning. Such a change can be made only if it falls within the requirements of the comprehensive plan for the use and development of property in the municipality. *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 175, 169 A.2d 268; *Kuehne* v. *Town Council,* 136 Conn. 452, 461, 72 A.2d 474; see *Parsons* v. *Wethersfield,* 135 Conn. 24, 29, 60 A.2d 771; *Strain* v. *Mims,* 123 Conn. 275, 288, 193 A. 754. The action of the board was arbitrary, illegal and in abuse of discretion.

It is unnecessary for us to decide whether the court was correct in characterizing the change of zone as spot zoning. Nor need we pass upon the legality of the special meeting of the board.

There is no error.

In this opinion the other judges concurred.