[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO APPEAL FROM DENIAL OF ZONE CHANGE
ISSUE
Whether the court should sustain the plaintiff's appeal because the defendant Commission's decision denying the plaintiff's application for a zone change was illegal, arbitrary or an abuse of the Commission's discretion.
FACTS
The following facts are alleged in the plaintiff's appeal. The plaintiff, Michael Cannata, owns property located at 136 Nooks Hill Road, Cromwell, Connecticut. The plaintiff applied to the Cromwell Planning and Zoning Commission ("the Commission") for a change of zone for a parcel of land (the "subject premises") at the rear of his property from Flood Plain District to Residential. The Commission denied the application and notice of the denial was published in the Middletown Press on June 14, 1991. The plaintiff alleges that he is aggrieved by the decision of the Commission.
The plaintiff alleges that the Commission acted illegally, arbitrarily and in abuse of its discretion in denying his application because:
 a: it failed to acknowledge that zoning the subject premises as Flood Plain was a mistake despite the overwhelming evidence in the plaintiff's favor;
 b: it failed to rezone the subject premises which fail to meet the formal definition of the Flood Plain District as set forth in the Town of Cromwell Planning and Zoning Regulations (the "Regulations");
 c: it failed to consider changes in circumstances in the area of the subject premises;
 d: its decision resulted in an unlawful confiscation of the plaintiff's property;
CT Page 6700
 e: its decision denied the plaintiff due process and equal protection of the laws in violation of the Constitutions of the State of Connecticut and the United States
DISCUSSION
I. Aggrievement
General Statutes Sec. 8-8(b) provides that "any person aggrieved by any decision of a [planning and zoning commission] may take an appeal to the superior court . . . ." General Statutes Sec. 8-8(a)(1) provides that an aggrieved person, for purposes of General Statutes Sec. 8-8(b), "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the [planning and zoning commission]."
The plaintiff testified at the hearing before this court that he has been at all relevant times and continues to be the owner of the subject premises. The plaintiff is aggrieved by the Commission's decision.
II. Timeliness
General Statutes Sec. 8-8(b) requires that an appeal of a decision of a planning and zoning commission "shall be commenced by service of process [on the chairman or clerk of the planning and zoning commission and the clerk of the municipality] within fifteen days from the date that notice of the decision was published . . . ." See General Statutes Secs. 8-8(a)(2), 8-8(e) and 8-8(f).
The Commission published notice of the decision in the Middletown Press on June 14, 1991. The plaintiff caused the appeal to be served on William Bouton, the Chairman of the Commission, and on Bernard Neville, the Town Clerk of the Town of Cromwell, on June 27, 1991. The appeal is timely.
III. Standard of Review
A zoning authority acts in a legislative capacity when it rules on an application for a zone change. Homart Development Co. v. Planning Zoning Commission,26 Conn. App. 212, 215-16, 600 A.2d 13 (1991). "The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function." Protect Hamden/North Haven from Excessive Traffic CT Page 6701 Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,543, 600 A.2d 757 (1991) (citations omitted). "This broad legislative discretion applicable to the approval of a zone change is equally applicable to the denial of a requested zone change, and will not be disturbed on appeal unless the zoning authority has acted illegally or arbitrarily and has thus abused the discretion vested in it." Homart Development Co. v. Planning Zoning Commission, supra, 216-17.
 Our courts are loath to overturn a decision by a zoning authority denying a requested zone change. [Citation omitted.] "Only under certain circumstances, where the classification is found to be unjust, confiscatory or unconstitutional and the reasons for such a change are unusual and compelling, will the court reverse the authority's refusal to grant an application for a change of zone on the ground that the existing classification is found to be unjustified." Cascio v. Town Council, 158 Conn. 111, 114, 256 A.2d 685 (1969).
Id., 215. "The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Protect Hamden/North Haven from Excessive Traffic Poll, Inc. v. Planning and Zoning Commission, supra. 543 (citations and internal quotation marks omitted).
The plaintiff argues that the Commission's denial of the plaintiff's application was illegal, arbitrary and an abuse of its discretion because the Commission failed to acknowledge that the inclusion of the subject premises in the Flood Plain zone was a mistake and in contradiction of the definition of the Flood Plain zone contained in the Regulations. The Regulation defined the Flood Plain zone as follows:
 Flood Plain District: a zoning district, shown on the "Official Zoning Map" of the Town of Cromwell, Connecticut which encompasses most lands located within the 100-year flood boundary and includes the Floodway.
(Return of Record ("ROR"), exhibit 47, Regulations, CT Page 6702 Art. III, p. 27). The Regulations define the Floodway as follows:
 Floodway: the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge the base flood without cumulatively increasing the water surface elevation more than one foot.
(ROR, exhibit 47, supra, Art. III, p. 27.) The plaintiff argues that the Flood Plain zone is "definitional," that is, land included in the Flood Plain zone must meet the formal definition provided in the Regulations. The plaintiff further argues that because it is undisputed that the subject premises are of an elevation high enough to place them outside the 100-year flood boundary[2] and that they are not in the Floodway, the inclusion of the subject premises in the Flood Plain zone constitutes a mistake in zoning.
 The principles governing interpretation of zoning regulations are well settled. . . . We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. [Citations omitted.] The words employed in zoning regulations are construed according to the commonly approved usage of the language. [Citation omitted.] Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. [Citation omitted.] A property owner should be able reasonably to ascertain from the regulations how to use the property in compliance with them. [Citations omitted.] Zoning regulations that carve out districts must afford adequate information to enable one to determine the properties comprising each district and the uses permitted and prohibited therein. [Citations omitted.]
 Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. Essex Leasing, Inc. v. Zoning Board of Appeals, CT Page 6703 206 Conn. 595, 601, 539 A.2d 101 (1988). [Citations omitted.] The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. [Citation omitted.]
 When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results. [Citations omitted.]
. . . .
 . . . "A zoning map is an integral part of the zoning regulations, without which the regulations are said to be meaningless"; [Citation omitted]; and we conclude that the official map read together with the relevant zoning regulations, may serve to disclose the intention of the local zoning authorities. [Citations omitted.]
Planning Zoning Commission v. Gilbert, 208 Conn. 696,705-707, 546 A.2d 823 (1988).
Given the above principles, a fair reading of the definition of the Flood Plain District, read together with the Cromwell zoning map, shows that the Commission intended to establish a traditional "Euclidean" zone, not a "definitional" zone. See Homart Development Co. v. Planning Zoning Commission, supra, 214. To hold otherwise would lead to an unreasonable and bizarre conflict between the Regulations and the zoning map. Accordingly, the subject premises need meet no qualification other than that it is located in the Flood Plain zone as indicated on the Cromwell zoning map. The plaintiff concedes that "[t]he Cromwell Zoning Map includes the plaintiff's property in the F-zone in that it lies south of a straight line drawn parallel to Nooks Hill Road." (Plaintiff's Brief, p. 4) Accordingly, the plaintiff has failed to prove that there was any mistake in zoning.
V. Change of Circumstances
The plaintiff argues that the fact that the Connecticut Department of Environmental Protection ("DEP") has issued a permit to him allowing him to engage in residential CT Page 6704 development of the subject premises constitutes a change of circumstances which entitled him to a zone reclassification. The DEP permit states, in pertinent part:
 The Commissioner of Environmental Protection has considered your application with due regard for the matters enumerated in Section 22a-343 of the General Statutes and has found that the proposed work as specified and conditioned below is in conformance with the purposes of said section of the statutes and the applicable provisions of Connecticut's Water Quality Standards relating to construction and will not increase appreciably the danger to life and property during the occurrence of flood flows that do not exceed in magnitude the design flood flow used as a basis for establishing the stream channel encroachment lines at this location, and will not appreciably impair the natural resources and ecosystems of the area.
(ROR, exhibit 44, DEP Permit.)
The plaintiff cites Damick v. Planning Zoning Commission, 158 Conn. 78, 256 A.2d 428 (1969) in support of his argument that this change of circumstances entitles him to a zone reclassification. The Damick court stated:
 An essential purpose of zoning regulations is the stabilization of property uses. Abbadessa v. Board of Zoning Appeals, 134 Conn. 28, 34, 54 A.2d 675 [(1947)]; Strain v. Mims, 123 Conn. 275, 287, 193 A. 754 [(1937)]. Ordinarily, changes in zone should not be made unless some new condition has arisen which substantially alters the character of the area. Vece v. Zoning Planning Commission, 148 Conn. 500, 503, 172 A.2d 619 [(1961)]. "`Before a zoning board rezones property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that a reclassification ought properly to be made.'[1] Yokely, Zoning Law CT Page 6705 Practice (2d Ed.) Sec. 85 (1957 Sup. ) Those who buy property in a zoned district have the right to expect that the classification made in the ordinance will not be changed unless a change is required for the public good. [Citation omitted.]" Zoning Commission v. New Canaan Building Co., 170, 175, 148 A.2d 330 [(1959)].
Damick v. Planning Zoning Commission, supra, 84-85. Although the Damick case states that a change in circumstances is a ground which may support a zoning reclassification, it does not state that a change in circumstances automatically entitles an applicant to a zoning reclassification. This determination remains within the legislative discretion of the local zoning authority. Homart Development Co. v. Planning Zoning Commission, supra, 215-16. Furthermore, the cover letter accompanying the DEP permit indicates that the plaintiff was not relieved of the obligation of obtaining the approval of the local zoning and wetlands authorities. (ROR, exhibit 44, DEP Permit.)
When a local zoning authority acts on an application for a zone change, it must consider the comprehensive zoning plan. Ghent v. Zoning Commission, 220 Conn. 584, 600,600 A.2d 1010, (1991); Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning and Zoning Commission, supra, 544. The Commission had before it a memorandum from Craig Minor, the Cromwell Town Planner, which states, in pertinent part:
 The "Environmental Quality Goals, Policies and Programs" section of the 1980 Plan of Development is an outline to assist the Commission in making land use decisions. One of the policies listed is to: "Direct development away from environmentally sensitive areas." Although the applicants have demonstrated that the area in question is above the flood plain, the record shows that the wildlife habitat and related natural systems function inextricably with the surrounding Dead Man's Swamp proper. The importance of Dead Man's Swamp has been thoroughly documented (most recently in the U.S. Department of the Interior's "Regional Wetlands Concept Plan issued in October 1990). The plan of Development CT Page 6706 certainly gives the Commission the authority to take whatever legal steps it wishes to protect Dead Man's Swamp.
(ROR, exhibit 16, Memorandum from Town Planner, dated April 4, 1991; see also exhibit 27, 1980 Plan of Development, p. 8.) Additionally, the Commission had before it a letter from DEP biologist Kenneth J. Metzler which states that the subject premises "is part of the immediate drainage basin of Dead Man's Swamp and any drainage, both surface and subsurface, on this site will eventually enter the swamp. (ROR, exhibit 19, letter from DEP biologist Kenneth J. Metzler, dated April 29, 1991.) Accordingly, the plaintiff has failed to prove that the DEP permit entitles him to a reclassification of zone or that the Commission's decision was not supported by evidence on the record.
VI. Unlawful Confiscation and Denial of Equal Protection
The plaintiff argues that because the subject premises are not within the 100-year flood boundary or the Floodway, they do not threaten life, property, the environment or flood capacity. The plaintiff further argues that the Commission has denied him equal protection and unlawfully confiscated his property because his property has substantial use limitations while identical property outside the Flood Plain zone has minimal restrictions.
A landowner can make a claim of a regulatory taking only when he purchases property "with a reasonable expectation of residential or commercial development." Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404,414, 593 A.2d 1368 (1991). The plaintiff testified at the hearing before this court that the subject premises were in the Flood Plain zone when he purchased them. Accordingly, the plaintiff has failed to prove that he purchased the subject premises with a reasonable expectation of residential development and, therefore, the Commission's denial of the plaintiffs application for a zone change did not constitute an unlawful confiscation.
 While the equal protection clauses prohibit [a local zoning] commission from drawing irrational classifications, the commission is not constitutionally required to treat all landowners identically without regard to relevant differences among them. In order for the regulation to withstand an equal protection challenge, the distinctions employed by the commission CT Page 6707 must "`be based on natural and substantial differences, germane to the subject and purpose of the [regulation], between those within the class and those whom it leaves untouched.'" Caldor's, Inc. v. Bedding Barn, Inc., 177 Conn. 304, 315, 417 A.2d 343 (1979), quoting Tough v. Ives, 162 Conn. 274, 292-93, 294 A.2d 67 (1972); New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511
(1976). The equal protection clauses are offended only if the reclassification rests on grounds wholly irrelevant to the achievement of the commission's objectives. Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988).
 In scrutinizing the regulation under the "rational relationship" standard, moreover, we must indulge every legal presumption and reasonable inference of fact in its favor. Blue Sky Bar, Inc. v. Stratford, [203 Conn. 14], 23[, 523 A.2d (1987)]; [citation omitted]. . . . The regulation "`carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality'" Kadrmas v. Dickinson Public Schools, supra, 462, quoting Hodel v. Indiana, 452 U.S. 314, 331-32, 101 S.Ct. 2376, 69 L.Ed.2d 40
(1981); see Blue Sky Bar, Inc. v. Stratford, supra, 24; and, therefore, the plaintiffs must establish its constitutional invalidity beyond a reasonable doubt. See Aaron v. Conservation Commission, [183 Conn. 532, 441 A.2d 30 (1981)]; accord, Faraci v. Connecticut Light Power Co., [211 Conn. 166, 558 A.2d 234 (1989)].
Mario v. Fairfield, 217 Conn. 164, 175-76, 585 A.2d 87
(1991).
In the present case, there is no question that the Flood Plain zone includes land which is neither within the 100-year flood boundary nor within the Floodway. Nevertheless, one of the Commission's objectives is to direct development away from environmentally sensitive areas, such as land within the 100-year flood boundary and the Floodway. (See ROR, exhibit 27, 1980 Plan of Development, p. 8.) The CT Page 6708 proximity of the subject premises and other land of equal or greater elevation within the Flood Plain zone to land within the 100-year flood boundary and the Floodway distinguishes it from otherwise identical land of equal or greater elevation elsewhere in Cromwell. This distinction is based on natural and substantial differences germane to the subject and purpose of the Regulations. Accordingly, the plaintiff has failed to meet his burden of proving that the Flood Plain zone bears no rational relationship to the regulatory objectives of the Commission.
VII. Denial of Due Process
The plaintiff argues that the Commission's denial of his application for a zone change constituted a denial of due process because "the regulations themselves are confusing and silent on very important issues." (Plaintiff's Brief, p. 9.)
As stated earlier, the principles of regulatory construction compel the conclusion that the local zoning authority, acting in its legislative capacity, intended the Flood Plain District to be a traditional "Euclidean" zone. Accordingly, the plaintiff has failed to prove either that the Regulations are silent or confusing or that the Commission's decision constituted a denial of due process.
CONCLUSION
The court does herewith dismiss the plaintiff's appeal because the plaintiff has failed to prove that the defendant Commission's decision denying the plaintiff's application for a zone change was illegal, arbitrary or an abuse of the Commission's discretion.
AUSTIN, J.