[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiffs, Melissa J. Gluck and Benson Zinbarg, from a decision of the defendant, the Zoning Board of Appeals of the City of Stamford (ZBA), granting a special exception to the defendant, Group W Satellite Communications (Group W), authorizing the construction of an additional five microwave satellite antennae at 652 Glenbrook Street, in the Glenbrook section of Stamford.
The property is known as the Glenbrook Industrial Park and is located in the M-L (Light Industrial) zone, which permits commercial microwave transmission facilities if approved by the ZBA as a special exception in accordance with section 19, 3.2 of the Stamford zoning regulations.[1] Microwave antennae are a permitted use in the zone by virtue of Appendix A to the zoning regulations, which is referred to as the Land Use Schedule, Table II, Item 134.5, Microwave Transmission Facilities. Six of such antennae already exist on the two acre site, which is leased by Group W, a subsidiary of Westinghouse Broadcasting Company, Inc., by reason of a previous special exception granted by the defendant ZBA in 1985.
The antennae are so-called satellite dishes, which vary between approximately 25 feet to 40 feet in diameter. They take a broadcast signal from various networks in New York City, and beam the signal to a satellite over 20,000 miles above the earth. The signal is then returned to earth and received by the network affiliates throughout the country for transmission to individual television sets.
Section 19, 3.2 of the zoning regulations provides that special CT Page 3422 exceptions shall be granted by the ZBA only upon a finding that the proposed use or structure accords with public convenience and welfare, after taking into account certain factors: (1) the location and nature of the proposed site including the proximity of existing dwellings; (2) the nature and intensity of the proposed use in relation to the surrounding area and neighborhood, and a conclusion that the use is not more objectionable to nearby properties on account of potential disturbances to the health, safety or peaceful enjoyment of property than the public necessity demands; (3) impact on traffic; (4) the nature of the surrounding area and whether the proposed use might impair its development; and (5) relationship with the Master Plan.
In addition to special exception approval, Group W was obliged to comply with chapter 160 of the Stamford Code of Ordinances Governing Microwave Transmissions, the so-called microwave ordinance.[2] The Department of Health recommended approval of Group W's application to the ZBA after receiving a favorable report from its panel of experts concerning electromagnetic radiation. ("It was determined that the total microwave radiation levels from the existing and proposed facilities would be within permissible levels"). The panel of experts reported that "the Glenbrook earth station facility will not produce environmentally significant microwave power densities." The Stamford microwave ordinance employs the strictest standard in the nation, which currently is the Massachusetts regulation which permits a maximum of 1,000 microwatts per square centimeter. The Health Department reported that the maximum projected radiation from Group W's proposal was 53.2 microwatts per square centimeter, approximately twenty times less than the 1,000 microwatts per square centimeter permitted by the ordinance. In addition to the approval from the Health Department, the Planning Board of the City of Stamford also reviewed the application and recommended approval.
The ZBA held a public hearing on Group W's application and thereafter unanimously granted the request for a special exception to permit the construction of five additional satellite antennae, as well as the erection of a one-story, eight foot by sixteen foot equipment building. The Board's decision indicated that the proposed use was in accordance with the public convenience and welfare, and that it had considered the location and nature of the site, the nature and intensity of the proposed use in accordance with the standards for special exception uses, the impact on traffic, the nature of the surrounding area, and the city's Master Plan, in arriving at its decision. The ZBA also noted that the proposed new antennae will be the same size or smaller than the existing antennae, and that the nearest neighbor's residence was 158 feet distant. CT Page 3423
The plaintiffs, Gluck and Zinbarg, appealed this decision of the ZBA to this court in accordance with General Statutes 8-8, alleging in their complaint of March 3, 1992, that they were both aggrieved by the Board's approval of Group W's application, in that they feared that the microwave radiation emanating from the proposed antennae would be detrimental to their health and safety. The plaintiffs further contended that the ZBA failed to adequately consider the standards in the zoning regulations for the granting of special exceptions, including the proximity of adjacent residential properties, the impact upon "public convenience and welfare of operations," and the impact on the neighborhood.
General Statutes 8-8(a)(2)(b) provides that "any person aggrieved by a decision of a board may take an appeal. . . ." The defendants contend that neither plaintiff fits the definition of an "aggrieved person" in8-8(a)(1) as "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
Evidence was taken on this subject. and it is this court's opinion that plaintiff Gluck is not "aggrieved" within the meaning of General Statutes 8-8(a)(1), but plaintiff Zinbarg is. Gluck lives at 43 Elm Tree Place in Stamford, which she conceded was over 1000 feet from the site of the new antennae. Also, she is not the record owner of these premises. Ms. Gluck is therefore not statutorily aggrieved as one whose property abuts the subject premises or is within 100 feet thereof. The next question is whether she was "classically aggrieved." "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, I the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." Munhall v. Inland Wetlands Commission, 221 Conn. 46, 51, 602 A.2d 566 (1992) (internal quotation marks omitted).
At the public hearing and in her complaint Gluck expressed some generalized fears about the effect of microwave transmissions from the Group W earth station, but failed to offer any evidence that she was affected in any manner different from the general public. "It is a well established principle that mere generalizations and fears such as those about which the plaintiffs testified at the hearing do not establish aggrievement." Walls v. Planning Zoning Commission, 176 Conn. 475, 478, CT Page 3424408 A.2d 252 (1979). ". . . the plaintiffs . . . expressed `concern,' `fear' and `apprehension' that the subdivision approval might result in increased traffic; no specific evidence was offered, however, to support those fears . . . the unsubstantiated fears of the plaintiffs did not establish aggrievement. . . ." Id., 477. (emphasis in original).
Zinbarg, on me other hand, demonstrated mat he owned property across me street from the subject premises and that his property line was within one hundred feet thereof, and hence he is statutorily aggrieved. So long as one plaintiff establishes aggrievement, the court has subject matter jurisdiction over the appeal. Nowicki v. Planning Zoning Board,148 Conn. 492, 495, 173 A.2d 386 (1961).
The standard of review by this court in connection with the granting of a special permit or exception was reiterated just this week by the Appellate Court in Mobil Oil Corporation v. Zoning Commission,30 Conn. App. 816, 819, ___ A.2d ___ (1993). "The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it." (Citations and internal quotation marks omitted).
Based on this standard of review, it is evident that the defendant ZBA's decision granting the requested special exception for the additional antennae must be affirmed. The transcript indicates that there was ample evidence presented to the ZBA to sustain its decision. For example, the Health Department, in addition to forwarding the report of its panel of experts, also advised the ZBA that it had conducted random testing at the subject premises, and determined that the radiation levels were within the parameters of the Stamford microwave ordinance.
Moreover, although the defendant board had granted a similar CT Page 3425 application by Group W in 1985, for six antennae, in 1990 the ZBA rejected an application for nine new antennae, an enlargement of the lease area, and the construction of two new buildings. The present application reduced the request to five new antennae, remained within the current fenced area at the Glenbrook Industrial Park, and requested one new building, instead of two. In addition, the previously rejected application proposed that one of the satellite dishes would be within eighty-nine feet of the nearest residence, whereas the revised application approved by the Board indicated that the nearest antenna would be approximately 158 feet from me nearest residence, and that no new antenna would be substantially closer than the existing antennae. Therefore, the Board could reasonably conclude as it did that the current application would have less impact on the neighborhood than the 1990 application asking for an additional nine antennae.
The ZBA heard testimony from a real estate appraiser that the five additional satellite dishes would not adversely affect the value of the nearby residential properties. There was evidence presented to the Board that the proposed new antennae would not require any additional employees, and therefore would have no impact whatsoever on traffic. The transcript indicates a great deal of neighborhood opposition, but no evidence was presented to contradict the report of the Health Department and its advisory panel of experts that the proposed use did not violate the microwave ordinance and did not present any health hazard to the neighbors.
In summary, microwave transmissions are a permitted use in the zone where the property is located, provided special exception approval is granted by the ZBA. In addition, the application must be transmitted to the Health Board's panel of experts, whose recommendations must be considered by the ZBA. Certain standards are established for the granting of special exceptions, and the defendant Board concluded that the applicant, Group W, had complied with these special exception standards. That in turn requires the court to review the record to determine whether sufficient evidence was presented to the ZBA to justify its decision. As indicated above, this court believes that the Board's decision to grant the application had sufficient support in the record.
Accordingly, the decision of the defendant ZBA is affirmed. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of April, 1993. CT Page 3426
WILLIAM B. LEWIS, JUDGE