DONALD J. GHENT ET AL. *v.* ZONING COMMISSION OF THE CITY OF WATERBURY
(14199)

SHEA, CALLAHAN, GLASS, COVELLO and BERDON, Js.

Argued September 27—decision released December 17, 1991

*Robert E. Ghent,* for the appellants (named plaintiff et al.).

*Vincent J. Flynn,* assistant corporation counsel, for the appellee (defendant).

SHEA, J. The plaintiffs[1] have appealed from the action of the defendant zoning commission of the city of Waterbury in amending several sections of the Water-

---

[1] The plaintiffs are Donald J. Ghent, Joseph Gunterman, Gertrude T. Bergen, and 450 Meriden Road Corporation. The trial court found Ghent and Gunterman to be aggrieved because each of them owned land within the zones affected by the amendments. See General Statutes § 8-8. No aggrievement was found with respect to the other two plaintiffs. Only Ghent and Gunterman have appealed to this court and they are referred to hereinafter as the plaintiffs.

bury zoning ordinance, the effect of which is to prohibit multiple family dwellings in certain commercial zones. The trial court upheld the commission's decision and accordingly dismissed the appeal. After the Appellate Court had granted the plaintiffs' petition for certification for review pursuant to General Statutes § 8-8 (o), we transferred the appeal to this court pursuant to Practice Book § 4023.

The principal issue raised by the plaintiffs is whether the amendments adopted by the zoning commission are invalid because of the involvement of the mayor of Waterbury, Joseph Santopietro, in the amendment process. The plaintiffs also attack the amendments substantively as violating the standards for zoning regulations established by General Statutes § 8-2. We affirm the judgment dismissing the appeal.

There is no dispute about the facts. On September 16, 1987, Santopietro, as mayor of the city of Waterbury, submitted an application to the zoning commission for amendments to several sections of the zoning ordinance for the purpose of prohibiting multiple family dwellings in the Commercial Arterial (CA) and Commercial General (CG) districts and also eliminating such a use as a special conditional use in the CA zone. Pursuant to the Waterbury charter, the application was referred to the city plan commission for initial consideration and recommendation.

A public hearing on the proposed amendments was held by the city plan commission on November 9, 1987. By virtue of a charter provision making the mayor "chairman, ex-officio" of such authorities as the city plan commission, the mayor presided as chairman of the meeting. After the conclusion of the public hearing, the commission voted unanimously to approve the proposed amendments. The mayor did not vote at this meeting, nor does the charter authorize a vote for him, except to break a tie.

The zoning commission held a public hearing on the proposed amendments on December 16, 1987, at which an attorney appeared on behalf of the mayor and spoke in favor of the amendments. The commission did not vote on the proposal until February 17, 1988, when the commission members attending voted unanimously to adopt the amendments, deferring their effective date for six months.

The plaintiffs, as owners of property within the areas affected by the amendments, appealed to the Superior Court from the action of the zoning commission in adopting the amendments. The trial court rejected the numerous claims of irregularity raised by the plaintiffs and rendered judgment dismissing the appeal.

## I

The plaintiffs claim that the mayor's involvement in the process of adopting the amendments to the zoning ordinance, as their sponsor, as the presiding officer at the public hearing before the city plan commission and, through the appearance of his attorney, as their principal advocate at the public hearing before the zoning commission, tainted their adoption to such a degree as to require their invalidation.

## A

First, the plaintiffs claim that the mayor violated the doctrine of separation of powers, under which, as provided by our state constitution, "[t]he powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Conn. Const., art. II. The constitutional provision applies to the state and not to municipalities, which are governed by charters and other statutes enacted by the legislature. Furthermore, another pro-

vision of our state constitution, which requires the governor to "give to the general assembly, information of the state of the government, and recommend to their consideration such measures as he shall deem expedient"; Conn. Const., art. IV, § 11; indicates that the framers of our constitution did not regard the separation of powers principle as compartmentalizing the branches of government so rigidly as to prevent a chief executive officer from proposing modifications of existing laws to a legislative body.

We take judicial notice of the uniform practice in this country of mayors and other chief executives, especially when popularly elected, to become the principal proponents for legislative change. The plaintiffs cite no authority even questioning this practice. This court has expressed the view that "[a] mayor as the chief executive officer of the town was in duty bound to express to the public and to local administrative boards what he believed to be in the best interests of the community." *Schwartz* v. *Hamden,* 168 Conn. 8, 16, 357 A.2d 488 (1975); see 3 E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 12.43. We conclude that, even if the separation of powers principle were applicable to the mayor of Waterbury, it would not have been violated by his proposing amendments to the zoning regulations.

B

The plaintiffs next advance the more conventional argument that the mayor exceeded the scope of the powers of his office as delineated in the Waterbury charter. "Public officers . . . can only act within the scope of the powers and duties which the law prescribes for them." *Rogers* v. *County Commissioners,* 141 Conn. 426, 429, 106 A.2d 757 (1954); 63A Am. Jur. 2d § 300. The plaintiffs argue that there is no charter provision

or other source of authority that would sanction the conduct of the mayor as the petitioner and principal advocate for a zoning amendment.

In rejecting this ultra vires claim, the trial court relied on two provisions of the charter: (1) § 2101,[2] which designates the mayor as the "chief executive officer of the city" and makes him "chairman, ex-officio" of such agencies as the city plan commission and the zoning commission; and (2) subparagraph (a) thereof, which prescribes, in addition to his obligation "[t]o cause the laws and ordinances to be executed and enforced," a further duty of the mayoralty "to conserve the peace within the city and to be responsible for the good order and efficient government of the city." We agree that these sections of the charter provide sufficient authority for the mayor to have acted as a proponent of changes in zoning regulations.

The evident purpose of making the mayor chairman ex officio of various boards and commissions in the city pursuant to § 2101 is to allow him to have some input

[2] Section 2101 of the Waterbury charter provides in part: "The mayor shall be the chief executive officer of the city. He shall have been a legal voter and resident of the city for the five years immediately preceding his election and shall reside in the city during his term of office. The mayor shall be chairman of the board of finance with a voice and a vote. The mayor shall be chairman, ex-officio, as hereinafter defined, of all other boards or commissions or authorities, except the board of tax review, the board of zoning appeals, the civil service commission or any other board whose sole duties are those of reviewing or appeal. The boards or commissions or authorities shall elect from their numbers one who will act as presiding officer in the absence of the mayor. The position and duties of the mayor in relation to each of the aforesaid boards or commissions or authorities shall be effective, any provision of the Charter to the contrary notwithstanding, except that the provisions of the Charter pertaining to the mayor's powers and duties in connection with the board of aldermen shall not be amended by this section.

"It shall further be the duty of the mayor:

"(a) To cause the laws and ordinances to be executed and enforced and to conserve the peace within the city and to be responsible for the good order and efficient government of the city."

into the work of these agencies. Section 2103,[3] further-
more, grants to the mayor, when he acts as chairman,
"the power to preside at any meeting which he shall
attend, to have a voice without a vote, except that he
shall have the power to vote in order to break a tie at
any such meeting." In providing the mayor with a
"voice," the charter contemplates that the mayor is
to act as an advocate, not simply as a presiding offi-
cer. Despite problems that may arise for a mayor
attempting to perform both roles simultaneously, it is
abundantly clear that the mayor is authorized to
express his views on the various issues coming before
these agencies in carrying out his general obligation
"to be responsible for the good order and efficient
government of the city" as prescribed by § 2101 (a).

The advocacy role, which we construe the "voice"
provision of the charter to confer upon the mayor, must
be deemed to include the authority to propose legisla-
tive changes because of the duty imposed on the mayor
by § 2101 (a) "to be responsible for the good order and
efficient government of the city." Zoning regulations
may be regarded as a significant factor in advancing
these objectives. Furthermore, we are not aware of any
restraint upon the ability of *any* person to petition the
zoning commission for amendments to the text of regu-
lations that apply throughout the city. The plaintiffs
suggest that there exists a requirement of standing in
the form of having an interest, such as ownership of

---

[3] Section 2103 of the Waterbury charter provides: "The powers and duties
of the mayor acting as chairman ex-officio, as hereinbefore provided, shall
include the power to preside at any meeting which he shall attend, to have
a voice without a vote, except that he shall have the power to vote in order
to break a tie at any such meeting. Unless specifically empowered by each
particular board or commission or authority, the mayor shall have no power
to appoint committees of such bodies, nor to arrange the agenda of the
meetings of any such bodies, nor to exercise other plenary powers of a chair-
man. The mayor's attendance at any meeting shall be counted for the deter-
mination of the existence of a quorum at any such meeting. This amendment
shall take effect on January 1, 1968."

property, in the area to be affected by a proposed amendment. We have indicated that there is a "necessary interest which a nonowner must possess in order to have standing to apply for a special permit or a variance." *Richards* v. *Planning & Zoning Commission,* 170 Conn. 318, 323, 365 A.2d 1130 (1976). We are not inclined, however, to impose such a requirement for changes in the text of zoning regulations that apply generally throughout the city. Section 7.31-1[4] of the Waterbury zoning ordinance, which prescribes the requirements for filing an application for a zoning regulation amendment, contains no restriction based upon the interest of a petitioner. Section 7.33,[5] by contrast, requires that petitioners for amendments to the zoning map be owners of property seeking a change of zone for their own property or their agents.

We conclude that the plaintiffs' ultra vires claim is without merit.

C

The plaintiffs next claim that the presence of the mayor as presiding officer at the public hearing held by the city plan commission on his zoning amendment proposals violated the provision of General Statutes § 8-21[6] that "[n]o member of any planning commission

[4] Appendix B, § 7.31-1 of the Waterbury zoning ordinance provides: "APPLICATION. An original and six (6) copies of an application for an amendment to the zoning ordinance must be made to the zoning commission, in letter form, and submitted to the city clerk together with the cost of advertising same which shall be borne by the petitioner."

[5] Appendix B, § 7.33 of the Waterbury zoning ordinance provides: "AMENDMENT TO ZONING MAP. Any property owner within the City of Waterbury, or his assigned agent, may petition for an amendment to the zoning map, for his own property, subject to the following conditions . . . ."

[6] General Statutes § 8-21 provides: "No member of any planning commission and no member of any municipal agency exercising the powers of any planning commission, whether existing under the general statutes or under any special act, shall appear for or represent any person, firm or corporation or other entity in any matter pending before the planning or

. . . shall appear for or represent any person, firm or corporation or other entity in any matter pending before the planning or zoning commission . . . whether or not he is a member of the commission hearing such matter." They do not claim that the mayor's conduct of the meeting was other than impartial, that he had any personal financial interest in the amendments, or that he represented anyone other than the city. Since the Waterbury charter provides no vote for the mayor as an ex officio member of the commission, he did not vote on his own proposals, which the commission approved unanimously.

In *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 310–11, 278 A.2d 799 (1971), we commented with respect to § 8-21 that "it may well be doubted that the [statute was] intended to apply to an appearance by the chief executive official of the community." We concluded, however, that it was unnecessary to decide that question, "since the plaintiffs raised no objection at the hearing to [the official's] appearance." Id., 311. Although this precedent would support a similar disposition of the plaintiffs' claim on the ground of waiver for failure to object timely to the mayor's acting as chairman of the public hearing, the resolution of the issue is of public importance because such officials should not be unnecessarily inhibited from appearing at public hearings in order to represent governmental or community interests.

---

zoning commission or zoning board of appeals or agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the commission hearing such matter. No member of any planning commission shall participate in the hearing or decision of the commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. In the event of such disqualification, such fact shall be entered on the records of the commission and, unless otherwise provided by special act, replacement shall be made from alternate members pursuant to the provisions of section 8-19a, of an alternate to act as a member of such commission in the hearing and determination of the particular matter or matters in which the disqualification arose."

If the plaintiffs' position were sound that the provision of § 8-21 relied upon precluded the appearance at a public hearing of a mayor, representing solely the interests of the city, simply because he is an ex officio member of the commission involved, that statute would also appear to disqualify the other commission members, who presumably represent the same interests by virtue of their appointment. Such a result, of course, would be absurd. As the charter provision for a "voice" implies, the mayor should have an opportunity to be heard with respect to the interests of the city upon significant matters affecting the welfare of its residents that come before such agencies as the city plan commission. We resolve the doubt expressed in *Lurie* as to the applicability of the statute to a chief executive official appearing as the representative of the municipality at a public hearing before a commission of which he is an ex officio member, when it is exercising a legislative function, by holding that this statutory provision does not apply. Accordingly, we reject the plaintiffs' claim to the contrary.

## D

The plaintiffs also claim a violation of the provision of § 8-21 that "[n]o member of any planning commission shall participate in the hearing or decision of the commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." They do not claim that the mayor had any pecuniary interest or stood to gain financially from the adoption of the amendments he had proposed. They maintain, however, that the mayor had a "personal" interest in the sense that, as sponsor of the proposals, his self-interest in their adoption as a basis for advancing his political ambitions precluded impartial consideration of the amendments solely on their merits.

In *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774 (1948), this court rejected the notion that only a pecuniary interest would disqualify a member of a zoning commission from voting on an application for a zone change. We held that the vote by a commission member on the application of his wife was invalid because of his personal interest arising from such a relationship. "Anything which tends to weaken [public] confidence and to undermine the sense of security for individual rights which the citizen is entitled to feel is against public policy. In view of the natural sentiment of the family and the self-interest inherent in human nature, to countenance the action of [the commissioner] in this case would be to open the door to temptations upon which we need not enlarge." Id., 9. The statutory predecessor of § 8-21, adopted in 1951, endorsed our decision in *Low* by adopting as a standard for disqualification the existence of an interest "in a personal or financial sense."

In applying the statutory standard of personal interest, we have observed that "[l]ocal governments would . . . be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official." *Anderson* v. *Zoning Commission,* 157 Conn. 285, 291, 253 A.2d 16 (1968). We have concluded that a zoning and planning commission member was not necessarily disqualified from voting upon an excavation permit application because of his membership on the town conservation commission and his presence and participation at its meetings, when the application had been discussed. *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 186–90, 286 A.2d 299 (1971). "The law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true." *Furtney* v. *Zoning Commission,* 159 Conn. 585, 594, 271 A.2d 319 (1970).

We do not believe that, in requiring that commission members have no personal interest in matters coming before them, § 8-21 demands that their motivation in serving in such a capacity be solely and absolutely altruistic. Few people would be found to meet that standard. That the mayor's involvement in the amendment proceedings may have stemmed from a desire for personal or political aggrandizement would not indicate that he was tainted by the kind of personal interest proscribed by § 8-21. The plaintiffs' novel claim to the contrary is virtually frivolous. Their claim that the mayor was biased because of his sponsorship of the amendments and thus had a personal interest is similarly lacking in merit. The Waterbury zoning commission is empowered to amend the zoning regulations on its own motion, although the prescribed procedure for a referral to the city plan commission and public hearings must be followed. When the zoning commission acts to propose an amendment formulated by the commission, all of its members could be said to be similarly biased as sponsors of the proposal and, therefore, disqualified from voting on it. Such an inconceivable consequence compels the conclusion that sponsorship of a legislative proposal is not the kind of personal interest the statute was intended to preclude.

## II

In addition to the mayor's participation in the amendment process as a basis for invalidation, the plaintiffs claim that the amendments are flawed by two other procedural irregularities: (1) the involvement of the Waterbury legal department as legal adviser to the commission while it also allegedly represented the mayor's interest in the proposal; and (2) the failure to fill a vacancy in the membership of the commission in order to provide a full complement of five commissioners, as provided by the charter and by General Statutes § 8-1.

## A

The evidentiary basis for the claim of impropriety against the office of the corporation counsel is a letter addressed to the plaintiffs' attorney and signed by assistant corporation counsel Vincent Flynn, who represents the defendant in this appeal. The letter indicates that the mayor requested Flynn to respond to a letter of the plaintiff Ghent, written approximately one month after the plan commission hearing and objecting to the mayor's participation therein and his sponsorship of the zoning amendments, largely on the ground that the mayor had exceeded his authority. The letter rejected these contentions, but also indicated that Flynn had discussed the matter with the chairman of the zoning commission. At a subsequent public hearing on February 10, 1988, the chairman, in responding to the concern of another commissioner over the plaintiffs' procedural claims, stated that the mayor's proposal "is on solid legal ground and the Corporation Counsel has attested to that fact."

On the basis of these facts, the plaintiffs claim that the office of the corporation counsel was representing the interests of both the mayor and the zoning commission, thus committing an impropriety tending to undermine public confidence. There is little substance to this claim. The corporation counsel is not the attorney for either the mayor or the commission, but is a legal officer appointed to protect the city's legal interests. See 3 E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 12.52. The evidence indicates no conflict between the mayor and the commission concerning the zoning amendments. It was the duty of the corporation counsel to advise the commission concerning the procedural irregularities claimed by the plaintiffs and also the mayor as an ex officio member thereof. There was nothing improper in the performance of both of

these functions by the office of the corporation counsel. We have held that a municipal agency is entitled to legal advice in performing its duties. *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 444–45, 586 A. 2d 590 (1991). The plaintiffs' further claim that the advice given by the corporation counsel's office to the zoning commission with respect to the claimed procedural irregularities amounted to an ex parte communication on behalf of the mayor is wholly unsupported by the evidence.

## B

Section 3001[7] of the Waterbury charter provides that the zoning commission "shall consist of five resident electors of this city" in conformity with the provision of § 8-1 (a)[8] for "not less than five nor more than nine

[7] Section 3001 of the Waterbury charter provides in part: "Pursuant to Title 8, section 1, of the General Statutes, the zoning commission of the City of Waterbury shall consist of five resident electors of this city, one of whom shall be an alderman, and not more than three of whom shall be members of the same political party. They shall be nominated by the mayor for election by the board of aldermen. The five members of said commission first elected, as provided above, shall be for terms, as follows: One member for a term ending December 31, 1967; one member for a term ending December 31, 1968; one member for a term ending December 31, 1969; one member for a term ending December 31, 1970; and the aldermanic member for a term which coincides with his term on the board of aldermen. Subsequent elections shall be terms of four years, with the exception of the aldermanic member, who shall serve during his term on the board of aldermen. Vacancies shall be filled as provided above for the unexpired period of the term. The members of this commission shall elect from among their members a chairman and a secretary. . . ."

[8] General Statutes § 8-1 (a) provides in relevant part: "Any municipality may, by vote of its legislative body, adopt the provisions of this chapter and exercise through a zoning commission the powers granted hereunder. On and after July 1, 1974, in each municipality, except as otherwise provided by special act or charter provision adopted under chapter 99, the zoning commission shall consist of not less than five nor more than nine members, with minority representation as determined under section 9-167a, who shall be electors of such municipality. The number of such members and the method of selection and removal for cause and terms of office shall be determined by ordinance . . . ."

members." During the period when the zoning amendments were under consideration, only four commissioners were serving because of the failure to fill a vacancy on the commission. At the February 17, 1988 meeting of the commission, at which the amendments were adopted, one of the four members of the commission was absent. The three remaining commissioners voted unanimously to approve the amendments.

The plaintiffs claim that the existence of a vacancy on the commission, bringing its membership below the number specified in the charter as well as the minimum provided in § 8-1, resulted in the invalidation of the action of the three members of the commission who voted to approve the amendments.

"In the absence of legislative restriction, the general rule is that a committee or commission performing such functions as those exercised by the zoning commission in this case can take valid action at a meeting of which all members have proper notice and at which a majority are present." *Strain* v. *Mims,* 123 Conn. 275, 281, 193 A. 754 (1937). "Words purporting to give a joint authority to several persons shall be construed as giving authority to a majority of them." General Statutes § 1-1 (h). "[A]lthough vacancies occur by death or resignation, if a majority survives or remains there is a sufficient number to constitute a quorum, otherwise, there is not." 4 E. McQuillin, supra, § 13.30. Applying these principles to the case before us, we conclude that the amendments were legally adopted by the unanimous vote of the three commissioners who attended the meeting, despite the failure to fill the vacancy on the commission.

### III

The plaintiffs' substantive attack on the zoning amendments is based on their contention that they do not "reasonably serve the public health, safety and wel-

fare" and thus violate the requirement of General Statutes § 8-2[9] that zoning regulations "shall be made in accordance with a comprehensive plan and shall be designed . . . to promote health and the general welfare." It is undisputed that the effect of the zoning amendments was to eliminate multiple family dwelling uses from those permitted in CG and CA zones.

The plaintiffs have not attacked the findings of the trial court, based on the record of the hearing before the zoning commission, that the amendments were "intended to restrict further residential development in both the CA and CG zones"; that concern was expressed that, "because of the incursion of condominiums in these zones . . . little land remained for future

[9] General Statutes § 8-2 provides in pertinent part: "Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; *to promote health and the general welfare;* to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and *encouraging the most appropriate use of land throughout such municipality.* Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity." (Emphasis added.)

commercial development"; and that the amendments were proposed "[i]n order to preserve the land for its intended purpose." In urging his fellow commissioners to approve the proposal, the chairman referred to it as a "visionary one; one that restores predictability and orderliness to our comprehensive plan and one that anticipates future commercial land needs."

The plaintiffs complain that the elimination of multiple family dwelling uses in these zones is inconsistent with the preservation of other kindred uses permitted therein, such as hotels, motels, parks, playgrounds, libraries, community centers, hospitals, and public housing. For a court reviewing the action of a zoning commission in its legislative capacity, however, perfect harmony in zoning classifications is not the applicable criterion. "[E]very line drawn by a legislature leaves some out that might well have been included." *Belle Terre* v. *Boraas,* 416 U.S. 1, 8, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974).

We have applied a two-fold test to the action of a zoning commission: "(1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes] § 8-2 . . . ." *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 541, 338 A.2d 490 (1973). There is no indication in the record that the elimination of multiple dwelling uses in the two zones affected was designed to advance the interests of any particular individuals or enhance the value of certain parcels of land. The concerns mentioned by the chairman of the commission relating to the scarcity of land for commercial development within those zones involve the broad community welfare. At least in this sense, the requirement that zoning amendments be in accordance with a comprehensive plan has been satisfied, irrespective of the wisdom of the legislative judgment exercised.

With respect to the fulfillment of any of the purposes for which zoning regulations may be adopted as set forth in § 8-2, the most pertinent provisions of the statute are those declaring that such regulations "shall be designed . . . to promote health and the general welfare" and "shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to . . . encouraging the most appropriate use of land throughout [the] municipality." It is the rare case in which the legislative judgment of what is beneficial to the community can be superseded by that of the judiciary. The plaintiffs rely, however, on *Corthouts* v. *Newington,* 140 Conn. 284, 99 A.2d 112 (1953), in which a zoning amendment prohibiting residential uses in an industrial zone as applied to the plaintiff's land was held unconstitutional because it deprived him of any reasonable use of his land and was confiscatory. That case is readily distinguishable, however, because no similar claim of confiscation has been raised in this court. See *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 549–52, 552 A.2d 796 (1989). The plaintiffs have not contested in brief or at oral argument the conclusion of the trial court that no evidence had been presented in support of their claim of confiscation, in contrast to the situation in *Corthouts.* After reviewing the discussion of the amendments at the public hearing, we conclude that the zoning commission did not exceed its legislative authority in deciding that by "encouraging the most appropriate use of land throughout the municipality" the amendments are reasonably related to the advancement of the public welfare. General Statutes § 8-2.

The judgment is affirmed.

In this opinion the other justices concurred.