[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiffs, T. Jay Bradsell and a number of other individuals, from a decision of the defendant, the Zoning Commission of the City of Norwalk (Commission). The Commission's decision granted a special permit to the defendant, Roton Point Association, Inc. (Roton Point) which authorized the construction of three pools at a private beach club located on Long Island Sound in the Royaton section of Norwalk.
The property is situated on 12.8 acres on Pine Point Road in the "A Residence" zone. Article 30, 118-330B(2)(n) of the Norwalk Zone Regulations permits "waterfront clubs" in that zone if the defendant Commission grants a special permit in accordance with Article 140, 118-1450 of the Regulations. Article 43, 118-430 refers specifically to "waterfront clubs" as a permitted use in the A Residence zone, and indicates that the "purpose" of the regulation is "to encourage waterfront clubs by Special Permit in specified zones." A waterfront club, as defined in 118-430B, is a private club providing "significant water-related recreation, such as . . . beach and/or pools."
The Roton Point facility has been in existence for many years, and currently consists of a club house, tennis courts, a bath house and a beach area, with approximately 25,000 square feet of lot coverage. Roton Point has been developed under a condominium form of ownership, with 400 locker units. In June, 1992, Roton Point applied to the defendant Commission for a special permit to construct a swimming pool 75 feet long by 15 feet, a diving pool 25 feet by 40 feet, and a childrens' wading pool 15 feet by 20 feet, which would add another 5,500 square feet of lot coverage. The application included a 12 foot by 24 foot wooden structure housing pool pumps and filters, two gazebos and 20 new parking places.
Article 140, 118-1450 C of the zoning regulations provides that special permits may be granted by the Commission if the proposed use is in harmony with the general purposes and intent of these regulations and after consideration of certain conditions where applicable, which include, among others, the promotion of a stable traffic flow, and a consideration of the impact of noise and artificial light on the neighborhood.[1]
In addition to special permit approval, Roton Point was also obliged to obtain site plan approval under the Coastal Management Act, General Statutes 22a-90 et seq., because the property is located within a coastal boundary area as defined in General Statutes 22a-94b. The property is also situated in a flood hazard zone under the Norwalk regulations. A coastal site plan was submitted pursuant to Article 110, CT Page 2464 18-1110 (C), in order to "ensure compliance with the requirements of the Coastal Management Act."
The Commission held a public hearing on Roton Point's application on September 9, 1992, and on October 21, 1992, by a vote of seven to two, granted the request for a special permit and CAM (Coastal Area Management) approval for the construction of three pools. The Commission's decision indicated that the application was approved "because the proposal complies with the applicable sections of the Building Zone Regulations" and "with all applicable coastal resource and use policies." The Commission attached ten conditions to its granting of Roton Point's application relating to, among other things, the storage of chemicals, sound amplifiers, sedimentation and erosion.[2] The dissenters indicated in their remarks at the time the vote was taken that they had concerns regarding noise emanating from activities at the pools.
The plaintiffs appealed the decision of the Commission to this court in accordance with General Statutes 8-8. In their complaint, the plaintiffs allege that they are aggrieved by the Commission's approval of Roton Point's application in a number of ways including: that the Commission failed to adequately consider the impact of the proposal on the neighborhood where the plaintiffs lived in terms of noise, lighting, traffic, and blocking of views; that one of the members of the Commission, William R. Faulds, had a conflict of interest in violation of General Statutes 8-11; that other areas of the property were available for siting of the pools which would be further away from the plaintiffs' properties; that the Commission failed to limit the periods during which the pools could be used; that Roton Point had argued that a pool was needed because the beach was subject to closing for pollution, which representation was false; that the CAM application had been approved despite the visual impact of the proposal on the neighborhood, the necessity of fill and excavations, and the potential of the release of chemicals during flooding.[3] Plaintiffs also complained that certain portions of the transcript of the September 9, 1992 public hearing were missing, including testimony of their traffic expert.
General Statutes 8-8 (b) provides that "any person aggrieved by a decision of a board may take an appeal. . . ." Proof of aggrievement is essential to a court's jurisdiction of a zoning appeal. Hughes v. Town Planning Zoning Commission. 156 Conn. 505, 509, 242 A.2d 705
(1968). An "aggrieved person" is defined in 8(a)(1) as "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." CT Page 2465 Evidence was presented that plaintiffs Donna and Roger Wachnicki lived at 2 Nylked Terrace at the intersection of Gull Road directly across the street from the subject premises and that their property line was within one hundred feet thereof, and hence they are found to be statutorily aggrieved. So long as one plaintiff establishes aggrievement, the court has subject matter jurisdiction over the appeal. Nowicki v. Planning Zoning Board, 148 Conn. 492, 495,173 A.2d 386 (1961).
The standard of review by this court in connection with the granting of a special permit or exception was reiterated last year by the Appellate Court in Mobil Oil Corporation v. Zoning Commission, 30 Conn. App. 816,622 A.2d 1033 (1993). "The terms special permit and special exception have the same legal import and can be used interchangeably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it." (Citations and internal quotation marks omitted) Id., 819. See also Gardiner v. Conservation Commission, 222 Conn. 98, 108, 608 A.2d 672 (1992)("a court must defer to the agency's assessment of the credibility of the witnesses . . . even an expert, in whole or in part.")
If one assumes that the Commission did not formally state the reasons for its decision by simply stating that the application conformed with the standards for a special permit, the court is obliged to search the record to determine if there are reasons therein to support the agency's decision. Protect Hamden/North Haven v. Planning Zoning Commission,220 Conn. 527, 544-45, 600 A.2d 757 (1991). A review of the record including the transcript of the public hearing indicates that there was ample evidence presented to the Commission to sustain and support its decision. Gagnon v. Inland Wetlands Watercourses Commission,213 Conn. 604, 611, 569 A.2d 1094 (1990). As illustrative, Roton Point submitted a written traffic report and testimony from Allan CT Page 2466 Davis Associates, Inc., traffic engineers, indicating that traffic on streets adjacent to the subject premises would be "well below local streets and intersection capacity" even with whatever additional traffic was generated by the new pools. The traffic engineer also noted that "Roton Point Club traffic represents only a minor component of total street traffic" in the area of the subject premises. In terms of noise expected from the pools, Roton Point offered to the Commission a report from Lewis H. Bell, Acoustic Noise Control, which indicated that even with the additional noise from the new pools caused by "small childrens' voices and the splashing," the "resultant levels will be well below the daytime standards for residential zones" and therefore the pools would have only "a negligible acoustical impact" on the neighboring properties. The architect for the project described the reasoning behind the proposed location of the new pools and the planting of trees as additional screening.
There was indeed a great deal of opposition expressed at the public hearing to the proposed new pools, including reports of a traffic engineer and a noise consultant which contradicted the reports of Roton Point's experts, concluding that the proposal would have an adverse impact on the neighborhood in both of these regards. It is axiomatic however, that in an administrative appeal, the plaintiff has the burden of proving "that substantial evidence does not exist in the record as a whole to support the agency's decision." Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993). The plaintiffs in the present case have not sustained their burden in this regard. Moreover, it is the role of a zoning commission acting in an administrative capacity to determine "the credibility of witnesses and the determination of factual issues." Id., 588. "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (citations and internal quotation marks omitted.) Id.
With respect to the CAM application, Roton Point submitted a report from Soil Science and Environmental Services, Inc., of Cheshire, indicating that the project complied with the Coastal Area Management Act, including the proposed disposition of pool chemicals. General Statutes 22a-106 (b) states that in reviewing a coastal site plan a municipal commission must: (1) "consider the characteristics of the site. . . (2) consider the potential effects, both beneficial and adverse, of the proposed activity on coastal resources and future water-dependent development opportunities; and (3) follow all applicable goals and policies stated in section 22a-92 and identify conflicts between the CT Page 2467 proposed activity and any goal or policy." The report submitted to the Commission covers these items, including floodproofing of the filter room in order to prevent the leaking of pool chemicals, and there was no expert evidence to the contrary.
Although the court's task as a general proposition is to review the record to determine whether there was sufficient evidence presented to justify the decision of the municipal agency, which has been done, it is also incumbent on the court, I believe, to determine whether the Commission acted illegally, arbitrarily or in abuse of its discretion by reviewing the plaintiffs' complaint and memorandum of law in order to analyze their arguments in support of the request to reverse the Commission's decision. "The court may grant relief on appeal only where the local authority has acted illegally or arbitrarily or has abused its discretion." Frito-Lay, Inc. v. Planning Zoning Commission,206 Conn. 554, 573, 538 A.2d 1039 (1988).
The plaintiffs moved for leave to file additional evidence in accordance with General Statutes 8-8 (k). See Tarasovic v. Zoning Commission, 147 Conn. 65, 69, 157 A.2d 103 (1959). The plaintiffs claimed that one of the members of the defendant Commission, William R. Faulds, should have disqualified himself. A hearing was held on this subject in which William Faulds testified, as did his uncle, Russell Faulds, who owns and operates the surveying firm, Ryan and Faulds, that prepared the site plan application. The testimony indicated the following: (1) that William Faulds was chairman of the Commission's plan review committee which reviewed the site plan and CAM application prepared by his uncle's company, and then sent a favorable report to the full Commission; (2) that William Faulds made the motion before the Commission to approve the application and voted in the majority; and (3) that Faulds had no interest whatsoever, financial or otherwise, in his uncle's surveying business, had never worked for him or the company, never referred any business to Ryan and Faulds, never used that company's services himself, and did not stand to gain anything by the approval of the application. Moreover, Russell Faulds did not attend any meetings or hearings at which his site plan was discussed by the defendant Commission or its plan review committee.
The issue is whether Mr. Faulds was "directly or indirectly interested in a personal or financial sense" in the outcome of Roton Point's applications. General Statutes 8-11. If the answer is yes, then he should be disqualified from participating in the decision on these applications based on the authority of this statute. The concepts of financial and personal interest were addressed in Ghent v. Zoning Commission, 220 Conn. 584, 593, 600 A.2d 1010 (1991), a case involving CT Page 2468 similar wording in General Statutes 8-21, the planning statute. A personal financial interest is described as one in which a person "stood to gain financially from the adoption of the amendments." Id. The case points out that prior opinions or even sponsorship of a particular zoning proposition do not create a personal interest. There was no evidence presented that the granting of these applications by the Commission would benefit William Faulds financially, and therefore the motion to disqualify him is denied.
The plaintiffs also complained about a portion of the transcript of the public hearing that was missing, which apparently contained oral remarks by their traffic expert, Allan Smardin, of HMB Acoustics, Inc., remarks by several of the neighbors opposing Roton Point's application, as well as remarks by an attorney for a property owners' association in opposition to the proposal. However, the report of the plaintiffs' traffic expert was received by the Commission and is part of the record, as is a letter from the opponents' attorney, D.F. Waters, dated August 6, 1992, outlining the key points of the opposition to the application. In addition, the minutes of the public heating are in the record and have been reviewed. In the event of a gap in the transcript, a review of the minutes can be employed. "The minutes of these meetings provided a sufficient record of what occurred to enable the court to determine if there was substantial evidence to support any of the commission's findings." Milardo v. Inland Wetlands Commission, 27 Conn. App. 214,217, 605 A.2d 869 (1992).
The motion to introduce additional evidence outside the record also referred to alleged misrepresentations by Roton Point regarding beach closings and the location of the pools, coastal flooding, traffic and noise. At the heating on November 16, 1993, however, the plaintiffs indicated that they were not pursuing the other aspects of the motion to; supplement the record "today." There was no further motion or request regarding introducing evidence outside the record, and hence the balance of the motion to supplement the record is deemed abandoned.
In summary, swimming pools are a permitted use in the zone where the property is located, provided special permit approval is granted by the Commission. Certain standards are established for the granting of special permits as set forth in Article 140, 118-1450 C of the regulations, and Roton Point's application addressed these issues, including traffic impact, noise, lighting and effect on the neighborhood. The defendant Commission concluded that the applicant, Roton Point, had complied with these special permit standards. "The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (citations omitted.) Felsman v. Zoning Commission, 31 Conn. App. 674, CT Page 2469 678, 626 A.2d 825 (1993). On an appeal, this court must review the record to determine whether sufficient evidence was presented to the Commission to justify its decision. As indicated above, this court believes that the Commission's decision to grant the applications for a special permit and CAM approval had sufficient support in the record. Accordingly, the appeal of the plaintiffs is dismissed. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, 10th day of March, 1994.
William B. Lewis, Judge